# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2815 | **DATE** | 7/29/2004 |
| **CASE TITLE** | Diane O'Donnell vs. Pinnacle Corporation, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter memorandum opinion and order granting Town & Country's motion for summary judgment [doc. # 18-1]. This case is hereby terminated.

**(11)** ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUL 3 0 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 29 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | JUL 3 0 2004 | | |
| DL | courtroom deputy's initials | U.S. DISTRICT COURT CLERK, 2004 JUL 29 PM 6:29 FILED | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIANE O'DONNELL,                      )
                                       )
    Plaintiff,      )
                                       )   Judge Ronald A. Guzmán
v.                                     )
                                       )   03 C 2815
PINNACLE CORPORATION                   )
TOWN AND COUNTRY HOMES,                )
                                       )
    Defendant.      )

DOCKETED

JUL 3 0 2004

## MEMORANDUM OPINION AND ORDER

Following her termination from employment, Plaintiff Diane O'Donnell filed a two-count complaint alleging sex discrimination and retaliation and subsequently moved to voluntarily dismiss the sex discrimination claim. Pending is Defendant Town & Country Homes' motion for summary judgment on the retaliation claim. For the reasons set forth below, Town & Country Homes' motion is granted.

## FACTS

The following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. Town & Country Homes ("Town & Country") builds single and multi-family housing communities and subdivisions in the north and southwest suburbs of Chicago, Illinois. (Def.'s LR 56.1(a)(3) ¶¶ 3-4.) In 1993, O'Donnell began working for Town & Country as a part-time sales assistant and subsequently worked in a variety of full-time positions. (Id. ¶¶ 6-7, 9.) In 1996, Town & Country promoted O'Donnell to assistant construction manager where she supervised the completion of housing construction. (Id. ¶¶ 11-12.) In that position, a construction

manager, reporting to the production manager, supervised O'Donnell. (*Id.* ¶ 13.) In October 1999, O'Donnell accepted a marketing manager position, working in the corporate office. (*Id.* ¶ 14.)

In February 2001, O'Donnell was promoted to construction manager for Town & Country's Foxford Hills community in Cary, Illinois. (*Id.* ¶¶ 16-17.) The promotion occurred at the request of Town & Country's president, as well as Rich Ackman, production manager for the Foxford Hills location. (Pl.'s LR 56.1(b)(3)(B) ¶ 10; Def.'s LR 56.1(a)(3) ¶ 24.) In December 2001, O'Donnell asked to return to an assistant construction manager position, receiving a decrease in pay. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 13, 15.) At the time of her return to the lower position, Ackman was her supervisor, but in April 2002 Tom Hesse replaced him as production manager. (Def.'s LR 56.1(a)(3) ¶¶ 24-25.)

In roughly June 2002, O'Donnell received a homeowner's negative closing survey from Hesse. (Def.'s LR 56.1(a)(3) ¶ 27.) After receiving the negative survey, O'Donnell threw it down, walked away, and said something, while possibly using profanity. (*Id.* ¶ 28.)

At some point during the last two weeks of July 2002, Tom Hesse commented on O'Donnell's new haircut, stating: "with your hair cut like that, now I can call you butch." (Pl.'s LR 56.1(b)(3)(B) ¶ 27.) Because of her embarrassment, O'Donnell did not say anything to Hesse in response. (*Id.* ¶ 28.) On August 12, 2002, O'Donnell met with the Human Resources Manager, Kris Coughlin, informing her about Hesse's comment. (Def.'s LR 56.1(a)(3) ¶¶ 43-44.) In complaining, O'Donnell followed Town & Country's sexual harassment policy. (Pl.'s LR 56.1(b)(3)(B) ¶ 45.) Coughlin told

O'Donnell that she did not look "butch," that everyone knew she was not "butch," that she would investigate O'Donnell's complaint and that she would tell Andy Konovodoff, a Town & Country Executive Vice President. (Def.'s LR 56.1(a)(3) ¶¶ 49-50.) However, Coughlin did not inform Konovodoff until August 30, 2002, the date of O'Donnell's termination, and she did not investigate O'Donnell's complaint prior to that date. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 42, 46.) Hesse would later receive a verbal reprimand and have a written note placed in his personnel file. (Def.'s LR 56.1(a)(3) ¶ 57.)

In August 2002, Jim Vanderzanden replaced Hesse as production manager at Foxford Hills. (Pl.'s LR 56.1(b)(3)(B) ¶ 48.) On August 30, 2002, Vanderzanden informed O'Donnell of her termination. (*Id.* ¶ 60.) Following her termination, O'Donnell filed a complaint with the EEOC on November 11, 2002, and on March 13, 2003, the EEOC issued a notice of right to sue, and she sued Town & Country. (Compl. ¶¶ 12-13.)

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

In analyzing Town & Country's motion, this Court must view the facts in a light

3

most favorable to O'Donnell while "drawing all reasonable inferences in her favor." *Haywood v. Lucent Techs. Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). Yet, O'Donnell is not burden free since she "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Moreover, if O'Donnell "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," "Rule 56(c) mandates the entry of summary judgment." *Celotex*, 477 U.S. at 322.

Under Title VII, an employer is prohibited from retaliating against an employee who has "opposed any practice made an unlawful employment practice...or...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). To show employer retaliation, a plaintiff has two methods to establish a *prima facie* case: the direct method and the indirect method. *Haywood*, 323 F.3d at 531.

## I.    Direct Method

Under the direct method, a plaintiff must present direct or circumstantial evidence showing "a statutorily protected activity, an adverse employment action, and a causal connection between the two." *Id.* Rarely encountered in retaliation cases, and not encountered in this case, direct evidence requires "an admission by the decision maker that his actions were based upon the prohibited animus." *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Thus, circumstantial evidence is the second evidentiary form available, *i.e.*, "evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Id.* Because O'Donnell argues that she can

4

establish a *prima facie* case under the direct method, the Court will begin its analysis with that method. (Pl.'s Mem. Opp'n at 4.) It is undisputed that O'Donnell was terminated and thus suffered an adverse employment action. The questions before the Court are whether there is a triable issue regarding whether she engaged in statutorily protected activity and whether there was a causal connection between that activity and her termination. The Court holds that O'Donnell is unable to proceed under the direct method because she has failed to establish a triable issue as to whether there is a causal connection between the statutorily protected activity and the adverse employment action.

### A. *Statutorily Protected Activity*

The direct and the indirect methods require a plaintiff to show that he or she engaged in a statutorily protected activity. *Haywood,* 323 F.3d at 531. "[A]n employee may engage in statutorily protected expression under section 2000e-3(a) even if the challenged practice does not actually violate Title VII." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir. 1994). However, "the complaint must involve discrimination that is prohibited by Title VII" and a "plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 224 F.3d 701, 707 (7th Cir. 2000).

Clearly, O'Donnell had a subjective belief that in complaining to Coughlin she opposed discrimination prohibited by Title VII. O'Donnell's subjective belief is evidenced by the undisputed fact that O'Donnell followed Town & Country's sex

harassment policy to complain to Coughlin. (Pl.'s LR 56.1(b)(3)(B) ¶ 45.)

However, less clear is whether O'Donnell's complaint was objectionably reasonable, but, viewing the record in O'Donnell's favor, as it must, the Court holds O'Donnell has shown that she engaged in a statutorily protected activity. In arguing that O'Donnell's belief was not objectionably reasonable, Town & Country advances three arguments: (1) that O'Donnell never indicated that she "was being treated differently based on her sex or that she felt like she was being harassed," (2) "that no reasonable person could objectively believe that Mr. Hesse's single comment made to [O'Donnell] was unlawful under Title VII" and, (3) that O'Donnell's complaint did not involve the type of discrimination protected by Title VII, *i.e.*, sexual orientation discrimination. (Def.'s Mem. at 3-6.)

First, Town & Country correctly notes that "[a]lthough an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, 'she has to at least say something to indicate her [gender] is an issue.'" *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (quoting *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003)). While it does not appear in the record that O'Donnell used the words "sex" or "gender discrimination" in complaining to Coughlin to indicate her gender was an issue, she did say *something* to indicate her gender was an issue. O'Donnell's relay of Hesse's comment, "with your hair cut like that, now I can call you butch," indicated her gender was at issue as "butch" is slang for a person who exhibits "stereotypically or exaggeratedly masculine traits." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 253 (4th ed. 2000). Accordingly, because the plain meaning of the term "butch" relates to gender, Town &

Country's argument fails.

Town & Country's next argument, that no reasonable person could objectively believe a single comment was unlawful under Title VII, likewise fails. Town & Country relies on the U.S. Supreme Court opinion in *Clark County School District v. Breeden,* 533 U.S. 268, 269-71 (2001). In *Breeden,* a school district employee sued her employer school district for retaliation, alleging two separate adverse employment actions in response to two different protected activities made following a single comment. *Id.* at 269. The Court analyzed its prior sexual harassment cases, reaffirming that "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271 (quotations omitted). Without expressly applying this sex discrimination standard to retaliation, the Court concluded that "[n]o reasonable person could have believed that the single incident...violated Title VII's standard." *Id.; see Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 463 (7th Cir. 2002) ("[I]solated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment").

The Seventh Circuit "has repeatedly held that a plaintiff need not prevail on her Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation claim." *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir. 2002). *Cf. Mattson v. Caterpillar, Inc.,* 359 F.3d 885, 892 (7th Cir. 2004) (recognizing employee protection under Title VII, "is not lost simply because an employee is mistaken on the merits of his or her charge"). In *Fine,* the district court granted summary judgment on the plaintiff's sexual harassment and sex discrimination claims, but it allowed her

7

retaliation claim to proceed to trial, where a jury returned a verdict against the employer. 305 F.3d at 751. On appeal, the employer argued that the plaintiff could not have "reasonably have believed she was complaining about discrimination when the district court found that she was not discriminated against as a matter of law." *Id.* at 752. In analyzing the employer's argument, the court noted "[m]any claims might appear legitimate on the surface, but after discovery and a harder look at the full picture they turn out ultimately to lack merit. Under Title VII, a person may not be terminated for making such a grounded, yet unsuccessful, complaint." *Id.*

The precedent controlling this case clearly indicates that O'Donnell's allegation that Hesse's single comment constituted actionable sex discrimination would not survive summary judgment.[1] Perhaps this was the reason why she moved to strike that count of her complaint. But, as is clear, a plaintiff need not actually succeed on his or her sex discrimination claim to proceed under a retaliation claim. *See Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998) (finding an employee's complaint protected expression even though the court concluded that a reasonable person would not believe that had she been discriminated on the basis of sex).

To equate the objectively reasonable belief standard in the retaliation context to the sex discrimination standard would have a chilling effect on Title VII retaliation

---

[1] O'Donnell argues, without citing any supporting authority, that "there is no need to address the [objectively reasonable] standard because the Director of the Human Resources department felt that Diane was making the complaint pursuant to defendant's sexual harassment policy." (Pl.'s Mem. Opp'n at 6.) Although the fact that Town & Country's human resources director felt that O'Donnell followed the company's sexual harassment policy is not conclusive that O'Donnell's belief was objectively reasonable, it does however lends support to the reasonableness of her belief.

claims,[2] as a hypothetical plaintiff complaining about a single incident covered by Title VII would therefore not be engaging in a protected activity. *Cf. Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978) (noting "informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist"). Under such a situation, an employer who in fact retaliated against an employee for complaining about that single incident would prevail. Doubtlessly, this would counteract the remedial purpose of Title VII's retaliation provision. *See Johnson v. C&L, Inc.,* No. 95 C 6381, 1996 WL 308282, at *2 (N.D. Ill. June 6, 1996) (quoting *Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321, 323 (7th Cir. 1991)) ("Title VII is a 'remedial legislation which must be construed liberally' and '[i]n accordance with this principle courts should avoid technical interpretations of its procedural provision which would defeat those remedial purposes'.").

Finally, Town & Country's third argument, that O'Donnell did not engage in a protected activity, also fails. "Title VII protects an employee from retaliation for complaining about the types of discrimination it prohibits." *Hamm*, 332 F.3d at 1066 (quotations omitted). Thus, to receive protection under Title VII, O'Donnell's complaint must have been about sex, race, national origin, etc. Town & Country characterizes Hesse's comment as involving O'Donnell's sexual orientation, whereby her complaint would involve a type of discrimination not prohibited by Title VII, sexual orientation

---

[2]Preventing such an effect is important in light of numerous studies showing that most women not reporting sexual harassment do not report because they fear retaliation. *See* David A. Rutter, *Title VII Retaliation, A Unique Breed*, 36 J. MARSHALL L. REV. 925, 937 (2003).

discrimination. *See Hamner,* 224 F.3d at 708 ("Sexual orientation is not a classification that is protected under Title VII."). While it is true that the term "butch" can be "[u]sed especially of lesbians and gay men" and could thus have sexual orientation connotations, as previously discussed, "butch" also has gender connotations, something that is protected by Title VII. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 253 (4th ed. 2000). While the term "butch" has two interpretations, one which would not be protected by Title VII and another which would be, the record is unclear as to which connotation Hesse intended. Thus, reading the record in the light most favorable to O'Donnell, the Court holds that she engaged in protected activity.

### B. *Causation*

The final element to prove a *prima facie* case under the direct method requires a plaintiff to show a connection between the protected activity and the adverse employment action. *Haywood,* 323 F.3d at 531. O'Donnell primarily relies on the temporal proximity (eighteen days) between the protected activity and the adverse employment action. (Pl.'s Mem. Opp'n at 7-8.) But, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation . . . will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002). Moreover, while temporal proximity is evidence of causation, see *Lalvani v. Cook County, Ill.,* 269 F.3d 785, 791 (7th Cir. 2001), the pertinent issue is whether the person who made the decision to terminate a plaintiff's employment was aware of the discrimination allegations at the time of the alleged retaliatory termination, "because absent such knowledge [a plaintiff]

lacks a causal link between the termination and the complaint of discrimination." *Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 755 (7th Cir. 2000). As to this issue, O'Donnell has not shown that there is a genuine issue of material fact.

Local Rule 56.1(a) requires Town & Country as the moving party to include a statement of material facts to which they contend there is no genuine issue of material fact. In response, O'Donnell, pursuant to Local Rule 56.1(b), must include "a response to each numbered paragraph in [Town & Country's] statement, including, in the case of any disagreement, *specific references* to the affidavits, parts of the record, and other supporting materials relied upon" (emphasis added). Thus, if O'Donnell disagrees with a paragraph but fails to include specific references to the affidavits, parts of the record, or other supporting materials, that paragraph will be deemed admitted. In denying, O'Donnell has not complied with this rule.

Paragraph 38 of Town & Country's Rule 56.1 Statement states: "A few days before August 30, 2002, Mr. Konovodoff, Executive Vice President of Operations, made the decision to terminate Plaintiff's employment." (Def.'s LR 56.1(a)(3) ¶ 38.) In her Response, O'Donnell "admits that paragraph 38 reflects the deposition testimony of Mr. Konovodoff," while denying, without citing the record, "that the decision to terminate plaintiff was made a few days before August 30, 2002." (Pl.'s LR 56.1(b)(3)(A) ¶ 38.) As such, this paragraph is deemed admitted. Similarly, paragraphs 40 and 54 are deemed admitted, which respectively establish that "[a] few days before August 30, 2002, Mr. Konovodoff told Mr. Vanderzanden that he had decided to terminate Plaintiff's employment" and that "Mr. Konovodoff did not know Plaintiff had made a complaint about Mr. Hesse before August 30, 2002." (Def.'s LR 56.1(a)(3) ¶¶ 40, 54.) Thus, it is

11

clear that before August 30, 2002, Konovodoff was unaware of O'Donnell's complaint.

O'Donnell argues that the testimony of Coughlin raises a question of fact as to whether she was terminated before or after Konovodoff knew of her complaint. (Pl.'s Mem. Opp'n at 8.) O'Donnell contends that Coughlin informed Konovodoff of O'Donnell's complaint prior to O'Donnell's termination. O'Donnell supports this argument by citing to Coughlin's deposition. However, Coughlin's deposition contains no facts that would lead to a reasonable inference that Coughlin spoke with Konovodoff before O'Donnell's termination. Coughlin's testimony reveals that she informed Konovodoff of O'Donnell's complaint *after* O'Donnell was terminated or the decision to terminate O'Donnell had been made. (Coughlin Dep. at 34.) She stated: "Andy came to me that Friday morning, I think it was August 30th, and told me they were letting Diane go. And I said, by the way, I have been meaning to talk to you. And that is when I first said something." (*Id.* at 35.) Moreover, in the context of the time frame prior to O'Donnell's termination, Coughlin testified that she did not speak with anyone else in the company about any complaints that Ms. O'Donnell had made regarding Hesse's comment. (*Id.* at 70-71.) Coughlin explains that she did not attempt to contact Hesse or conduct an investigation because: (1) Coughlin was only in the office three and a half days the week O'Donnell complained; (2) Coughlin's subordinate who did the payroll was off work for her wedding and Coughlin was assuming her duties; and (3) Coughlin had other priorities with regard to personnel issues between August 12 and August 30, 2002. (*Id.* at 33-34.) The fact that Coughlin testified that she was unaware of whether O'Donnell was actually terminated at the time of her conversation with Konovodoff does not create a reasonable inference that Konovodoff, or anyone else other than Coughlin,

knew of O'Donnell's complaint prior to the decision to terminate O'Donnell. (*See* Coughlin Dep. at 80.)

Additionally, O'Donnell's argument that Ackman's testimony, that at the time of her termination he had "heard something in the wind" about her complaint, raises no question of fact as to whether *Konovodoff* knew of O'Donnell's "complaint prior to any decision to terminate Diane's employment." (Pl.'s Mem. Opp'n at 8.) As deemed admitted, Konovodoff had no knowledge of O'Donnell's complaint prior to August 30, 2002. Furthermore, at the time he was informed of the complaint, the record supports the argument that O'Donnell had already been terminated. Accordingly, the Court finds that O'Donnell cannot establish a *prima facie* case of retaliation under the direct method.

## II.    Indirect Method

The second method available to O'Donnell is the indirect method. Using the indirect method, a "plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Haywood*, 323 F.3d at 531. Unlike the direct method, the indirect method does not require a plaintiff to show a causal connection between the protected activity and the adverse employment action. *Id.*

As discussed above, the Court finds that O'Donnell engaged in a statutorily protected activity when she informed Coughlin of Hesse's comment. Furthermore, it is conceded that O'Donnell suffered an adverse employment action. Accordingly, to

13

determine if O'Donnell has stated a *prima facie* case under the indirect method, the Court looks to the record to determine whether she performed her job according to Town & Country's legitimate expectations and whether she was treated less favorably than similarly situated employees who did not engage in the protected activity.

### A.    *Meeting Performance Expectations*

Town & Country relies on three different arguments to contend that O'Donnell was not meeting performance expectations.  Town & Country's contends in its first argument that O'Donnell was not meeting performance expectations because she was demoted from construction manager to assistant construction manager and she was "struggling to fulfill the responsibilities of Construction Manager." (Def.'s Mem. Supp. Mot. Summ. J. at 7-8.)  However, the relevant inquiry is whether O'Donnell met performance expectations at the time of her termination, not over a year prior to her termination. *See Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of [her] termination.") (quotations omitted).  Even if her past performance were relevant, O'Donnell *requested* to return to the lower position, as admitted by Town & Country.

Next, Town & Country argues O'Donnell did not meet performance expectations because she held numerous positions during her tenure with Town & Country.  However, the fact that O'Donnell previously held numerous positions in Town & Country is not relevant to whether she met Town & Country's performance expectations of an assistant

14

construction manager at the time of her termination. *Id.* Again, past performance is not relevant. *Id.*

Finally, Town & Country argues that O'Donnell was not meeting its expectations as an assistant construction manager. Town & Country relies primarily on O'Donnell's response to receiving a negative homeowner survey in June 2002. However, there is evidence in the record that O'Donnell was meeting her expectations, thereby creating a genuine issue of fact as to this element. First, Hesse agreed that O'Donnell "turned out a good home." (Hesse Dep. at 34.) Next, "[p]rior to becoming supervisor at Foxford Hills, Tom Hesse never heard any criticism about Diane O'Donnell's work." (Pl.'s LR 56.1(b)(3)(B) ¶ 72.) Third, prior to O'Donnell's termination, Coughlin neither heard criticisms of O'Donnell's work, nor did any employees complain to her about O'Donnell's conduct. (Coughlin Dep. at 36.) Further, no one notified Vanderzanden that her work performance was poor. (Vanderzanden Dep. at 29.) While "general statements of co-workers, indicating that a plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting her employer's legitimate expectations at the time she was terminated," *Peele*, 288 F.3d at 329, the evidence above includes statements by her supervisors. As such, the Court finds that O'Donnell can establish this element of her *prima facie* case.

### B. *Similarly Situated Employees*

Under this final element, O'Donnell must show that she, "and not any otherwise similarly situated employee who did not complain, was...subjected to an adverse employment action." *Stone*, 281 F.3d at 642. An employee is similarly situated if

"directly comparable to [the plaintiff] in all material respects." *Rogers*, 320 F.3d at 755 (quotations omitted). O'Donnell argues that she has satisfied this element because the other assistant construction managers at the Foxford Hills location were not terminated. The other Foxford Hills assistant construction managers, employed under the same supervisor, are properly considered similarly situated employees as they have the same job functions as O'Donnell. *See Richardson v. Pepsi-Cola Gen. Bottlers, Inc.*, 282 F. Supp. 2d 855, 863 (N.D. Ill. 2003) (noting plaintiff's failure to identify similarly situated employees following identification of employees with different job and job functions than the plaintiff). Moreover, there is no evidence in the record that any of the other assistant construction managers voiced a statutorily protected complaint or were terminated. Accordingly, the Court finds that O'Donnell has presented a *prima facie* case under the indirect method.

### III.    Legitimate Reason for Termination and Pretext

Because O'Donnell has established a *prima facie* case, the shifts the burden of production shifts to Town & Country. *Sitar,* 344 F.3d at 728. As a result, Town & Country must advance a legitimate, non-invidious reason for its adverse employment action. *See id.* If Town & Country provides such a reason, O'Donnell must show that Town & Country's reason is pretextual. *See id.* Yet, while the burden of production shifts under this analysis, at all times the burden of persuasion rests with O'Donnell. *See id.*

In the present case, Town & Country has presented a legitimate reason for terminating O'Donnell. Specifically, Town & Country offers that O'Donnell was let go

because Foxford Hills was overstaffed. Admitted paragraphs of Town & Country's LR 56.1 statement reveal that Konovodoff was concerned about the staffing at Foxford Hills, in particular, whether Kurt Schorsch, construction manager, would be staying with the company. (Def.'s 56.1(a)(3) ¶ 33.) As a result, Konovodoff transferred Jeff Thies to Foxford Hills as an assistant construction manager, so that Thies could move into the construction manager position in the event Schorsch "could not fulfill his responsibilities." (*Id.* ¶ 34.) Following Thies' transfer, Foxford Hills "had more than the five construction personnel budgeted for the community." (*Id.* ¶ 36.) As a result, the termination of one employee, in this case O'Donnell, would bring Foxford Hills back to its budgeted number of construction personnel. Consequently, Town & Country has met its burden of production by providing a non-individuous reason for O'Donnell's termination. *Cf. Valentino v. Proviso Township,* No. 01 C 557, 2003 WL 23019168, at *3 (N.D. Ill. Dec. 24, 2003) (finding employer's termination of employee pursuant to a reduction in force to alleviate financial constraints constituted a non-discriminatory basis for plaintiff's termination).

Thus, to survive summary judgment, O'Donnell must provide evidence that Town & Country's reason is pretextual. *See Hilt-Dyson,* 282 F.3d at 467. Pretext "means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." *Wells v. Unisource Worldwide, Inc.,* 289 F.3d 1001, 1006 (7th Cir. 2002). To satisfy her burden of production, O'Donnell must demonstrate that Town & Country's "articulated reason for her discharge either: (1) had no basis in fact; (2) did not actually motivate her discharge; or (3) was insufficient to motivate her discharge." *Id.*

O'Donnell begins by citing Konovodoff's testimony after being asked why he decided to terminate O'Donnell. Specifically, Konovodoff testified: "I was realigning staff in the company, and, based on work load in other areas, we needed to make room and accommodate another construction manager for that job site." (Konovodoff Dep. at 31.) O'Donnell argues "[i]t simply does not make sense to terminate an assistant construction manager position to fill the void of a construction manager." (Pl.'s Mem. Opp'n at 10.) However, this Court does "not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision," *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000). It is admitted that Konovodoff transferred Thies into Foxford Hills as an assistant construction manager to become construction manager in the event Schorsch left. (Def.'s LR 56.1(a)(3) ¶¶ 33-34.) This explanation is not inherently suspicious and is supported by other facts which plaintiff has not rebutted.

O'Donnell argues that there are a number of "contradictions" in the record supporting her belief that overstaffing had no basis in fact. (Pl.'s Mem. Opp'n at 9.) The first "contradiction" is purportedly in Konovodoff's deposition testimony. When asked if the reason O'Donnell was terminated was because of overstaffing, Konovodoff responded: "No. That's one of the reasons." (Konovodoff Dep. at 32.) However, the Court fails to see how such testimony demonstrates that there is no basis in fact for overstaffing as a legitimate reason. O'Donnell's citation to Konovodoff's deposition fails to show that overstaffing was *not* a reason for her discharge. What Konovodoff's deposition reveals is that overstaffing was one of the reasons for O'Donnell's discharge.

The next "contradiction" O'Donnell notes is that following her termination,

Konovodoff had to bring in more people into Foxford Hills. She argues that if she "was terminated because of overstaffing at the site, then there would be no reason to hire or transfer employees to the site after [she] was terminated." (Pl.'s Opp. Br. at 10.) However, the record reveals that there was a reason to hire or transfer employees, as other employees left Foxford Hills subsequent to O'Donnell's termination. (Vanderzanden Dep. at 21-22.)

Third, O'Donnell argues another "contradiction," that overstaffing, as a reason for termination, was not mentioned in Town & Country's answers to O'Donnell's first set of interrogatories in response to the reasons O'Donnell was terminated. While "overstaffing" was not specifically mentioned, "needs of the business" was, as such, no "contradiction" is created.

Finally, O'Donnell argues that if overstaffing was the reason for her termination, then she "would have been given notice of her termination" in accordance with Town & Country's employee handbook, which requests "that if an employee is to leave employment that the employee give at least two weeks['] notice." (Pl.'s Mem. Opp'n at 10-11.) While the Court does not have a copy of the employee handbook, from O'Donnell's strained argument, it is clear that notice applies to employee *resignation*, not termination.

To survive summary judgment, O'Donnell "must proffer significantly probative admissible evidence showing that the employer's articulated reason for the discharge was a pretext for discrimination." *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). Based on O'Donnell's above arguments for pretext, the Court finds O'Donnell has failed to meet her burden to produce evidence showing a triable issue

regarding whether overstaffing was a pretext for discrimination. Moreover, "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct." *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 411 (7th Cir. 1997). Accordingly, "[o]ur only concern is whether the legitimate reason provided by the employer is in fact the true one." *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000). Further support for Town & Country's legitimate reason for termination is revealed by paragraphs deemed admitted; that the decision to terminate O'Donnell occurred prior to August 30, 2003, and that prior to that date, Konovodoff, the decisionmaker, had no knowledge of O'Donnell's complaint. (Def.'s LR 56.1(a)(3) ¶¶ 40, 54.)

## CONCLUSION

For the reasons set forth above, the Court grants Town & Country's motion for summary judgment [doc. no. 18-1]. This case is hereby terminated.

**SO ORDERED**                    **ENTERED:** JUL 2 9 2004

HON. RONALD A. GUZMAN
**United States Judge**

20